# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| BRYAN ALLEN,<br>　　　　　Appellant,<br><br>　　　v.<br><br>DEPARTMENT OF HEALTH AND<br>　HUMAN SERVICES,<br>　　　　　Agency. | DOCKET NUMBER<br>DE-315H-18-0006-I-1<br><br><br>DATE: May 11, 2023 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Bryan Allen</u>, Yuma, Arizona, pro se.

<u>Naomi L. White</u>, Phoenix, Arizona, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

¶1　　The appellant has filed a petition for review of the initial decision, which dismissed his termination appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

initial decision, and REMAND the case to the field office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2        On September 4, 2016, the agency appointed the appellant to the position of Clinical Nurse subject to a 1-year probationary period.  Initial Appeal File (IAF), Tab 9 at 13.  On Friday, September 1, 2017, the last workday prior to the anniversary of his appointment, it sent a letter to him via its internal email system and by certified, first-class mail advising him of his termination for removing patient health information, failing to timely screen patients, and failing to enter vital signs into the agency's electronic health record.  *Id.* at 15-16, 37-41.  The letter was not delivered to his address until September 5, 2017.  *Id.* at 39-41.

¶3        He filed the instant appeal challenging his termination.  IAF, Tab 1.  After providing the parties the opportunity to address the jurisdictional issue of whether the appellant was an "employee" with Board appeal rights and informing him of his jurisdictional burden regarding his claim of retaliation for an alleged protected disclosure, the administrative judge dismissed the appeal for lack of jurisdiction without holding the appellant's requested hearing.  IAF, Tab 2 at 3-6, Tab 8, Tab 10, Initial Decision (ID).  Specifically, she found that the appellant failed to nonfrivolously allege that he was an "employee" with Board appeal rights because the agency effected his termination before he completed his probationary period by making a diligent and reasonable effort to serve him with the termination letter on September 1, 2017.  ID at 4-6.

¶4        The appellant has filed a petition for review challenging the initial decision. He asserts that the agency did not effect his termination before the end of his probationary period because he was on leave on September 1, 2017, without access to the termination letter through his agency email and so he did not receive notice of the termination until he was verbally notified when he returned to work on September 5, 2017.  Petition for Review (PFR) File, Tab 1 at 3-4.  The agency

has responded in opposition, alleging that all agency employees can access their Government email from home and that the appellant otherwise received the termination letter through both certified and first-class mail and when he reported to work on September 5, 2017. PFR File, Tab 3 at 7-8.

¶5 In response, the Board issued a show cause order asking the parties to provide evidence and argument on how the appellant was notified of his termination and how he was able to access this notification. PFR File, Tab 4 at 2-3. The appellant responded, stating that, although he asked the agency for a copy of the email that included his termination notice, to date, he had not seen any such email from the agency. PFR File, Tab 5 at 4-5. He also states that, even if he could have accessed his office email account from home, he never received training on how to do so and instead was told that he needed to insert a Personal Identity Verification (PIV) card into a computer to access the email. *Id.* at 5. Further, he has attached statements from two former coworkers indicating that they believed that they were unable to access their Government email from home. *Id.* at 9-10.

¶6 The agency has responded that it diligently notified the appellant of his termination on September 1, 2017, via certified, first-class mail and by sending him an email that he could have accessed through its website. PFR File, Tab 6 at 5-8. It also has attached the declaration of the appellant's former supervisor in which she stated that she attempted to deliver the termination notice in person to the appellant from August 30 to September 1, 2017, but that she could not do so because he was absent. *Id.* at 9-10. She also stated that, on September 1, 2017, she mailed the termination notice. *Id.* at 10. She noted that, although she is unsure whether she attached the termination letter to the email, she notified the appellant of his termination in the body of the email. *Id.* She stated that the appellant never responded to the email and that, despite her attempts to do so, she was unable to recover the email. *Id.* at 10-11. The agency also has attached a

document explaining how employees can access their agency email through its website. *Id.* at 12-18.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The agency did not terminate the appellant before his probationary period expired and thus he is an "employee" under 5 U.S.C. chapter 75.</u>

¶7     To establish Board jurisdiction under 5 U.S.C. chapter 75, an individual must, among other things, show that he satisfies one of the definitions of "employee" in 5 U.S.C. § 7511(a)(1).   5 U.S.C. § 7513(d); *see Walker v. Department of the Army*, 119 M.S.P.R. 391, ¶ 5 (2013).  For an individual, such as the appellant, who is in the competitive service and has not been appointed subject to 10 U.S.C. § 1599e, this means that he generally must satisfy one of the following requirements:  (1) he is not serving a probationary or trial period under an initial appointment; or (2) he has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less.[2] 5 U.S.C. § 7511(a)(1)(A); *see Walker*, 119 M.S.P.R. 391, ¶ 5.

¶8     A probationary period ends at the completion of the last day of the employee's tour of duty before his anniversary date.  *Herring v. Department of Veterans Affairs*, 72 M.S.P.R. 96, 100 (1996); 5 C.F.R. § 315.804(b).  A "tour of duty" is an employee's regularly scheduled hours and days of duty.  *Hardy v. Merit Systems Protection Board*, 13 F.3d 1571, 1573 (Fed. Cir. 1994).  For example, when the last workday is a Friday and the anniversary date is the

---

[2] Individuals in the competitive service who do not satisfy either definition may nevertheless have the right to appeal a termination to the Board under 5 C.F.R. § 315.806. *See Walker*, 119 M.S.P.R. 391, ¶ 5.  However, the Board's jurisdiction over termination appeals under that section is limited to the following situations:  (1) the employee was discriminated against on the basis of his marital status; (2) the agency action was based on partisan political reasons; or (3) the agency action was based (in whole or part) on preappointment reasons and the agency did not follow the procedures of 5 C.F.R. § 315.805. *Id.*; 5 C.F.R. § 315.806(a)-(c).  The appellant has made no such allegations either below or on review.  PFR File, Tab 1 at 3-4; IAF, Tab 1, Tab 8 at 1.

following Monday, the agency must separate the employee before the end of his tour of duty on Friday. 5 C.F.R. § 315.804(b).

¶9       Here, the agency appointed the appellant to his position on September 4, 2016. IAF, Tab 9 at 13. Thus, his anniversary date was Monday, September 4, 2017. Accordingly, to effect his termination during his probationary period, the agency was required to terminate him by the end of his scheduled tour of duty on Friday, September 1, 2017.

¶10       When, as here, it is undisputed that the agency's termination action is based upon conduct occurring after the appellant's appointment, the agency must notify him "in writing as to why he is being separated and the effective date of the action." 5 C.F.R. § 315.804(a). The plain meaning of the regulatory language indicates that the employee is not terminated until he receives such notice because the regulations state that the agency terminates the employee "by notifying him in writing." *Lavelle v. Department of Transportation*, 17 M.S.P.R. 8, 15 (1983) (quoting 5 C.F.R. § 315.804), *modified on other grounds by Stephen v. Department of the Air Force*, 47 M.S.P.R. 672 (1991).[3] An agency is not required to actually afford an employee prior notice of its intention to terminate him, so long as it acts diligently and reasonably under the circumstances in attempting to afford him prior notice. *Rivera v. Department of Homeland Security*, 116 M.S.P.R. 429, ¶¶ 11–12 (2011); *Santillan v. Department of the Air Force*, 54 M.S.P.R. 21, 26 (1992). As discussed below, we find that the agency did not act in a diligent or reasonable way when, during the appellant's absence, it mailed him notice of his termination on its effective date and sent him an email to his agency address when he was on leave.

¶11       The agency sent the appellant notice of his termination by certified mail on Friday, September 1, 2017, the last day of his tour of duty. IAF, Tab 9 at 37-39.

---

[3] Although *Lavelle* quotes a previous version of 5 C.F.R. § 315.804, the current version of the regulation contains the identical language regarding providing employees written notice of their termination.

However, he did not receive this notice until September 5, 2017, after his September 4, 2017 anniversary date. *Id.* at 39-41. The Board has held, under similar circumstances, that such service, on its own, does not afford the appellant proper notice of the agency's termination action. *See Lavelle*, 17 M.S.P.R. at 16 (finding that, because the agency's termination action was to become effective the same day that it was issued, the agency's selection of "certified mail, restricted delivery," was inadequate to ensure prior service). Here, we also find that the certified mail, without more, did not constitute a diligent and reasonable effort to notify the appellant of his termination.

¶12     Further, we find that sending the email to the appellant's agency address does not cure the deficiency in notifying him. In responding to the show cause order, the appellant stated that he was unable to access this email and that, if he were able to do so, he never received training regarding how to do so. PFR File, Tab 5 at 5. In making this statement, he indicated on the online questionnaire that he was asserting facts from his personal knowledge and declared, under penalty of perjury, that the facts stated in his pleading were true and correct. *Id.* at 3. A declaration subscribed as true under penalty of perjury, if uncontested, proves the facts it asserts. *Woodall v. Federal Energy Regulatory Commission*, 30 M.S.P.R. 271, 273 (1986). Here, the agency asserts that its employees can access their Government email via its website. PFR File, Tab 6 at 7. However, it has not contradicted the appellant's assertion that, in the event that he had such access, the agency did not train him on how to use the website to access his email. Furthermore, his former coworkers' statements that they believed a PIV card was required to access email outside of work support the appellant's assertion. PFR File, Tab 5 at 9-10. Consequently, we find that, even assuming that the appellant could have accessed his agency email outside of work, the agency did not inform him that he could do so or instruct him on the process for accessing it.

¶13     Accordingly, we find that the agency's email to an account that the appellant did not know he could access does not make its efforts reasonable and diligent. *Cf. Scull v. Department of Homeland Security*, 113 M.S.P.R. 287, ¶¶ 13-14 (2010) (finding that the appellant failed to make a nonfrivolous allegation that he was not terminated when his Federal Career Internship Program appointment expired when, although he was on leave during the last day of his internship, the agency sent copies of the termination notice to his email and to his residence via overnight and certified mail and his third-line supervisor left voicemail messages on his Government and personal cellular phones informing him that his position was not being converted). Because the agency did not act reasonably and diligently to notify the appellant of his termination and failed to terminate him before the end of his probationary period, we find that he is an "employee" with Board appeal rights under 5 U.S.C. § 7511(a)(1)(A)(ii).

We must reverse the agency's action because the appellant filed a timely appeal and the agency violated his due process rights by failing to comply with the procedures outlined in 5 U.S.C. § 7701.

¶14     Because the appellant is an "employee" with Board appeal rights and he was subjected to an appealable removal action pursuant to 5 U.S.C. § 7512(1), he was required to file his Board appeal no later than 30 days after the effective date, if any, of the action being appealed, or 30 days after the date of his receipt of the agency's decision, whichever is later. 5 C.F.R. § 1201.22(b)(1). Here, the appellant received the agency's decision on September 5, 2017, and filed his appeal on September 29, 2017. IAF, Tab 1, Tab 9 at 37-41. Thus, he timely filed his appeal fewer than 30 days after receiving the agency's decision.

¶15     Further, the agency failed to provide the appellant minimum due process, thus requiring reversal of the action. An agency's failure to provide a tenured public employee with an opportunity to present a response, either in person or in writing, to an appealable agency action that deprives him of his property right in his employment constitutes an abridgement of his constitutional right to minimum

due process of law, i.e., prior notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). Here, the agency issued the termination notice, effective immediately, and did not provide the appellant an opportunity to respond. IAF, Tab 9 at 15-17. Therefore, the agency's procedures for effecting the separation did not comport with a tenured employee's constitutional right to minimum due process of law. *See Claiborne v. Department of Veterans Affairs*, 118 M.S.P.R. 491, ¶ 8 (2012). Accordingly, the agency's removal action must be reversed. *See Samble v. Department of Defense*, 98 M.S.P.R. 502, ¶ 14 (2005).

We remand the appeal for adjudication of the appellant's claim of whistleblower reprisal.

¶16    Below, the appellant asserted that the agency was retaliating against him for reporting that it did not treat a patient who was HIV positive. IAF, Tab 1 at 5. Because he has asserted a claim of whistleblower reprisal, he may be entitled to relief in addition to reversal of the agency's decision. 5 U.S.C. § 1221(g); *see Samble*, 98 M.S.P.R. 502, ¶ 15.[4] Accordingly, this claim is not moot and he is entitled to its adjudication. 5 U.S.C. § 7701; *see Samble*, 98 M.S.P.R. 502, ¶ 16. Thus, we remand the appeal for a hearing and adjudication on the merits of his affirmative defense of whistleblower reprisal. *See Samble*, 98 M.S.P.R. 502, ¶ 16.

**ORDER**

¶17    For the reasons discussed above, we remand this case to the field office for further adjudication in accordance with this Remand Order.

¶18    Pending a final decision on the appellant's claim of whistleblower reprisal, we ORDER the agency to restore the appellant to duty, effective September 1, 2017. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir.

---

[4] The Board issued *Samble* before the passage of the Whistleblower Protection Enhancement Act of 2012 and before subsequent amendments to the Whistleblower Protection Act. However, these changes in the law do not affect the relevant holding.

1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶19        We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶20        We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶21        No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶22        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

FOR THE BOARD:

<u>       /s/ for               </u>
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). *****Do not process online SF50s until notified to do so by DFAS Civilian Pay.***

☐ 5) Certified timecards/corrected timecards. *****Do not process online timecards until notified to do so by DFAS Civilian Pay.***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.      Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.      The following information must be included on AD-343 for Restoration:

   a.      Employee name and social security number.
   b.      Detailed explanation of request.
   c.      Valid agency accounting.
   d.      Authorized signature (Table 63).
   e.      If interest is to be included.
   f.      Check mailing address.
   g.      Indicate if case is prior to conversion.  Computations must be attached.
   h.      Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.      Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.      Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.      Outside earnings documentation statement from agency.
4.      If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.      Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.      If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.      If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a.      Must provide same data as in 2, a-g above.
   b.      Prior to conversion computation must be provided.
   c.      Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.